# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6834 | **DATE** | 9/17/2001 |
| **CASE TITLE** | FRANK J. WSOL, SR., et al vs. ROBERT F. CARR, III, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants Fiduciary Management Associates, Inc.'s consolidated motion for summary judgment is hereby granted [17-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 1 8 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 70 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| CG | courtroom deputy's initials | 01 SEP 18 AM 9: 33 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK J. WSOL, SR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 99 C 6834 |
| | ) |
| ROBERT F. CARR, III, et al., | ) Judge Ronald A. Guzman |
| | ) |
| Defendants | ) |

DOCKETED
SEP 18 2001

SEP 18 2001

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending is Defendants Fiduciary Management Associates, Inc.'s ("FMA") and Robert F. Carr's ("Carr") consolidated Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. For the reasons set forth below this motion is granted and judgment in favor of Defendants Carr and FMA is hereby entered.

### BACKGROUND FACTS

The following facts are undisputed except to the extent specifically noted herein.

Plaintiffs are the International Brotherhood of Teamsters Union Local No. 710 Pension Fund (the "Fund") and the Fund's current trustees. (Def.'s LR56.1 (a)(3) ¶ 1.) The Fund is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A). (*Id.*) Defendant FMA is an investment manager hired by the Fund to invest and manage certain Fund assets from June 1994 through January 1999. (*Id.*

¶ 2.) FMA is a corporation with headquarters in Chicago, Illinois. (*Id.*) Defendant Carr is the Chairman and President of FMA. (*Id.* ¶3.)

In March, 1999, Plaintiffs filed suit against FMA in *Wsol, et al. v. Fiduciary Management Associates, Inc., et al.*, Case No. 99 C 1719 (N.D.Ill.)(Conlon, J.) (hereafter referred to as *Wsol I*). (*Id.* ¶ 4.) The court notes that in *Wsol I* the defendants were FMA and East West Institutional Services, Inc. (East West). (*Id.*) In the present action, in addition to FMA and East West, there are five additionally named Defendants.[1]

The alleged factual basis for Plaintiff's complaint in *Wsol I* arose from FMA's use of a particular introducing broker – East West Institutional Services, Inc. ("East West"), which was also named as a defendant – in connection with trades of the Fund's Assets under management during the period of June 1994 until mid-1997. (*Id.* ¶ 4.) As explained by Plaintiff's counsel in his opening statement in the trial of *Wsol I*, Plaintiffs claimed that FMA used East West as part of a scheme whereby FMA supposedly agreed to bestow substantial amounts of the Fund's assets on East West in the form of brokerage commissions, in exchange for being hired and, thereafter, retained as a money manager for the Fund. (*Id.*) Plaintiffs also claimed that the use of East West harmed the Fund. (*Id.*) Plaintiff's complaint in *Wsol I* alleged that FMA violated the fiduciary standards and prohibited transactions provisions of ERISA, and breached FMA's written investment advisory contract with the Fund. (*Id.*)

On October 4, 1999, Plaintiffs in *Wsol I* filed a single document entitled Motions for Leave to File First Amended Complaint and to Vacate Discovery and Trial Dates ("Motion"). (*Id.* ¶ 5.) In their Motion, Plaintiffs sought leave to file their First Amended Complaint and, in

---

[1] Five additionally named defendants are FMA president Robert F. Carr, III ("Carr"), former Fund trustee William V. Close ("Close"), East West principal Christopher Roach ("Roach"), Pension Fund Evaluation's principal George William Phillips ("Philips"), and Pension Fund Evaluation, Inc (PFE).

2

light of the proposed Amended Complaint, to vacate existing discovery cutoff and trial date. (*Id.* ¶ 6.) According to Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ("Plaintiff's Response") good cause existed for additional time for discovery independent of the proposed Amended Complaint. (Pl.'s LR 56.1 (b)(3)(A) ¶ 6.) The proposed First Amended Complaint was based on the same alleged scheme as the initial complaint. (Def.'s LR 56.1 (a)(3) ¶ 7.)[2]

On October 7, 1999, Judge Conlon denied Plaintiffs' Motions. Judge Conlon ruled that the proposed amended complaint was untimely, as Plaintiffs sought to file it only five weeks before the close of discovery. (*Id.* ¶ 8.) Judge Conlon also found that Plaintiffs were vague as to when they acquired the information regarding the additional Defendants and the racketeering claims. (*Id.*) Judge Conlon concluded that allowing the amended complaint would materially delay the trial and prejudice the Defendants' ability to defend the case. (*Id.*)

On October 19, 1999, less than two weeks after Judge Conlon's denial of leave to amend, Plaintiffs filed this action ("*Wsol II*"). (*Id.* ¶ 9.) Plaintiffs acknowledge that the Complaint in *Wsol I* pleads the same factual allegations and causes of action that were contained in the proposed First Amended Complaint in *Wsol I*, rejected by Judge Conlon as untimely. (*Id.*) The first page of Plaintiffs' Complaint in *Wsol II* states:

> Plaintiffs state that this Complaint is related to [*Wsol I*]. On October 7, 1999, Judge Conlon denied Plaintiffs' Motion to Amend their Complaint, filed therein, seeking leave to plead the causes of action stated in this Complaint. (Id.)

---

[2] Although, Plaintiff's Response represents that Plaintiffs did not sue Carr in *Wsol I*, nor name PFE nor Phillips as RICO defendants in the proposed First Amended Complaint, Defendant's LR56.1 (a)(3) is deemed admitted by the Plaintiffs because Plaintiffs did not include specific reference to the record for their disagreement under Local Rule 56.1 (b)(3)(A).

3

FMA moved in *Wsol I* to enjoin Plaintiffs from litigating *Wsol II* or, alternatively, for reassignment. (*Id.* ¶ 10.) Judge Conlon denied FMA's motion, noting that *Wsol I* would go to trial in January 2000, and that a final judgment in *Wsol I* could have some preclusive effect on *Wsol II*. (*Id.*) Plaintiffs' response claims that Judge Conlon found that *Wsol II* was not duplicative of *Wsol I* as the second case involved additional and/or different parties and claims, but this statement is disputed. (Pl's LR 56.1 (b)(3)(A) ¶ 10.)

Trial in *Wsol I* began on January 14, 2000. (Def.'s LR 56.1 (a)(3) ¶ 11.) During opening statements, Plaintiffs' counsel described Plaintiffs' theory of that case in similar terms to Plaintiffs' characterization of the substance of their earlier proposed First Amended Complaint and allegations in *Wsol II*. (*Id.*) In particular:

> [FMA] spent millions of dollars for something that costs no more than a couple of thousand. That was imprudent. That money shouldn't have been spent. It was spent to benefit themselves in the classic – to get the business, to maintain the business. And they engaged in multiple concealment, criminal and fraudulent acts to keep the scheme going for 39 months with East West and defraud other investment managers into bestowing on East West even more commissions out of the assets of the 710 Fund. That's our theory of the case. (*Id.*)

Furthermore, Plaintiffs' counsel noted that the Plaintiffs were proceeding with another action involving "this particular scheme." (*Id.*)

During the trial in *Wsol I*, Plaintiffs presented evidence in their case-in-chief against FMA over the course of four trial days. (*Id.* ¶ 12.) On the first day, Carr testified virtually the whole day. (*Id.*) Over the course of the next three days, Plaintiffs called 12 more witnesses. (*Id.*) Several exhibits were introduced. (*Id.*) Plaintiffs' counsel asked questions and made arguments regarding PFE and Phillips at various times throughout the trial. (*Id.*)

4

At the close of Plaintiffs' case-in-chief, FMA moved the Court to enter judgment on partial findings in favor of FMA pursuant to Fed. R. Civ. P. 52(C). (*Id.* ¶ 13.) On January 21, 2000, the court heard over three hours of oral argument on FMA's motion. (*Id.*) During argument, Plaintiffs' counsel asserted, among other things, that Carr illegally "directed brokerage" commissions to East West and Roach, and when East West went out of business, "continued to direct brokerage for another three or four months" to Phillips and PFE until "I guess Mr. Carr felt it was time to come clean." (*Id.*)

On January 27, 2000, Judge Conlon granted FMA's Motion on Partial Findings on all counts and entered findings of fact and conclusions of law. (*Id.* ¶ 14.) Judge Conlon's findings in *Wsol I* included:

> FMA's use of East West was completely appropriate, as FMA used East West because of the valuable research East West provided and because "East West had access to reputable brokerage houses that it used to conduct the Fund's transactions." (*Id.* ¶ 15.)

> FMA's use of East West in no way damaged the Fund because East West and the clearing brokers achieved "best execution" on all transactions made on behalf of the Fund and protected the Fund participants' best interests. (*Id.*)

> FMA did not pay East West a "referral fee." (*Id.*)

> FMA's use of East West was not a condition of FMA's retention by the Fund. (*Id.*)

> The Fund paid brokerage commissions of six cents per share, the standard industry commission rate for institutional investors such as the Fund. (*Id.*)

After making express findings of fact and conclusions of law, Judge Conlon entered judgment in favor of FMA on all counts. (*Id.* ¶ 16.)

5

Subsequent to Judge Conlon's allowance of Defendants' Motion for Judgment on Partial Findings, the Fund timely moved for post-judgment relief ("New Trial Motion"), arguing it was deprived of a fair trial because of earlier procedural and evidentiary rulings. (Pl.'s LR 56.1 (b)(3)(B) ¶ 17.) Judge Conlon directed FMA to respond to Plaintiffs' Motion and the Fund filed a reply memorandum. (*Id.* ¶18.)

On April 17, 2000, a federal grand jury in the Northern District of Illinois indicted Roach, William Close and Richard Tringale ("Tringale"), a Roach associate, on alleged RICO and money laundering violations. (*Id.* ¶ 19.) The Fund filed another motion and brief with Judge Conlon, asking for leave to supplement the motion for a New Trial with the indictment. (*Id.* ¶ 21.) Judge Conlon granted Plaintiffs leave to file and supplement their motion and ruled that FMA may file a reply by May 5, 2000, which FMA did. (*Id.* ¶ 21; Def.'s LR56.1 (a) ¶ 21)

On May 30, 2000, Judge Conlon entered a Memorandum Opinion and Order denying Plaintiffs a new trial. (Pl's LR56.1 (a)(b)(3) Ex. A.)* On June 2, 2000, former trustee Close pleaded guilty to 20 counts of the indictment. (Pl.'s LR56.1 Supp. Stmt. Ex 1.)* On December 18, 2000, Roach and Tringale entered Plea Agreements admitting guilt to 27 counts of Indictment 00 CR 0288 including violations of the RICO in connection with the unlawful kickback and money laundering conspiracy directed at the Fund alleged in the Fund's complaint. (Pl.'s LR56.1 Supp. Stmt. ¶ 1.)

On January 15, 2001, Roach executed a Declaration, under penalty of perjury which states, in pertinent part:

> 3. In the spring of 1994, before FMA received a contract from the Fund to manage an equity portfolio, I met with Richard Tringale, my East West associate, FMA's Robert F. Carr, III("Carr"), and former Fund trustee

6

William V. Close in the lounge of the Ritz Carlton hotel in Chicago, Illinois (the "meeting" or the "Ritz Carlton meeting"). In that meeting, Carr agreed that, in return for FMA's retention by the Fund as an investment manager, FMA would direct brokerage commissions, in the amount of the management fees to be paid by the fund to FMA, to clearing brokers for the credit of East West (such clearing brokers having previously entered into clearing agreements with East West). It was further agreed at this meeting that the fact of our agreement and the involvement of me, Tringale, and East West in the brokerage commission transactions would be concealed from the Fund, its trustees (other than Close and Robert Baker), and its staff and agents.

4. At the Ritz Carlton meeting, Close stated to Carr that no brokerage commissions should be paid to another broker who had previously introduced Carr to Close because that other broker had failed to pay Close and former fund trustee Robert Baker ("Baker") their correct share- their "kickbacks"-of the directed brokerage commissions received by that broker from securities trades made by another investment manager who had previously agreed to an arrangement similar to the one accepted by Carr at the Ritz Carlton meeting.

5. After FMA was retained as an investment manager to the Fund, FMA, pursuant to the agreement made at the Ritz Carlton meeting, directed brokerage commissions for the credit of East West through various clearing brokers which I, from time to time, identified to FMA. On numerous (more than ten) occasions thereafter, both in person and via telephone, Close and/or I informed Carr that the amount of commissions being generated by FMA for the credit of East West was less than the amount of management fees FMA was receiving from the Fund, and that if FMA did not generate additional commissions for the credit of East West, FMA would lose the Fund's business. Following these conversations, FMA usually directed more commissions for the credit of East West than had been being generated prior to these conversations. Close, Carr and I all made statements in these numerous conversations which explicitly acknowledged that Close and Baker were receiving a share of the commissions generated by FMA for the credit of East West.

6. Carr also assisted in the recruitment of other investment managers ultimately retained by the fund who would agree to an arrangement similar to the agreement made by Carr as described in paragraph 3 herein, including Phoenix Duff & Phelps and Murray Johnstone International Ltd. Before I met with or contacted representatives of these firms to enter into arrangements similar to the arrangement agreed to by Carr as described in paragraph 3 herein, Carr told me he had spoken to an identified representative

7

of these firms and had confirmed that these firms would agree to and did implement such arrangements. Carr arranged my introduction to representatives of these firms and was in attendance at the separate meetings I attended with representatives of these firms at which such similar arrangements were agreed upon. In 1994, Carr also told me that Clark Blizzard of Shawmut Investment Advisors, Inc. could be trusted to comply with arrangements similar to those agreed to by Carr as described in paragraph 3 herein.

7. In 1994, Carr arranged for Leslie Golembo of Perfomance Analytics, Inc. ("PAI") to meet with me and Richard Tringale at the Westin Hotel in Chicago before PAI was hired as a fund consultant to assist the Fund in the selected of its investment managers. At that meeting, I agreed with Leslie Golembo that as a condition of PAI being hired by the Fund as a consultant, PAI would recommend only qualified investment managers which were recommended by me and Close. After making this agreement, PAI was retained by the Fund and implemented this agreement.

8. I have entered into a settlement agreement with the Fund and its trustees which obligated me to, among other things, appear as a witness at trials in which the Fund is a party and to testify truthfully and completely about my dealings with the Fund's investment managers, consultants, trustees and brokers.

On January 22, 2001, the Fund filed a F. R. Civ. P. 60(b)(2) Motion for a New Trial in *Wsol I*. (*Id.* ¶ 5.) On March 19, 2001, Judge Conlon in *Wsol I* denied Plaintiff's Motion For a New Trial, finding and concluding, without an evidentiary hearing, that although "[i]t is beyond dispute that Plaintiffs learned of the guilty pleas and plea agreements, as well as the declaration Roach signed for Plaintiffs, after the bench trial in this case," and that "there is an insufficient basis to conclude that Plaintiffs failed to exercise due diligence" in obtaining this evidence, "Roach's proffered post-trial testimony does not qualify as "newly discovered evidence" for purposes of Fed. R. Civ. P. 60(b)(2). (*Id.* ¶ 6.)

8

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing the record on summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmovant. *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665, 667 (7th Cir.1995). To avert summary judgment, however, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A summary judgment proceeding is not a vehicle for the resolution of factual disputes; it is designed to determine whether there is any material dispute of fact that requires a trial. *Id.* If no reasonable jury could find for the party opposing the motion, it must be granted. *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

Defendants FMA and Carr's Consolidated Memorandum in Support of Their Motion for Summary Judgment asserts that the separate legal principals of claim preclusion (res judicata) and issue preclusion (collateral estoppel) prohibit Plaintiffs from relitigating the case before this Court against FMA and its president, Carr, the claims and issues were unsuccessfully litigated in front of Judge Conlon in Wsol I. The doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion) have the dual purpose of protecting litigants from the burden of

relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. See *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328-29 (1971).

Claim preclusion requires that a litigant join in the same suit all legal and remedial theories that concern the same transaction and arise from the same core of operative facts. *Northern Assurance Co. of America v. Square D Co.*, 201 F.3d 84, 87 (2d Cir.2000). Issue preclusion bars from relitigation issues of fact or law previously determined by a valid final judgment in an action between the same parties. *Continental Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979).

## ISSUE PRECLUSION

Plaintiffs raise four arguments as to why issue preclusion is unavailable: (1) Judge Conlon's decision in *Wsol I* is not a final judgment; (2) The indictment and subsequent plea agreements of certain Defendants in this case represent a significant change in circumstances; (3) Judge Conlon failed to grasp the subject matter and issues of *Wsol I*, and the Fund was denied the opportunity to have crucial evidence considered; and (4) This lawsuit involves issues different than those presented in *Wsol I*. If any of these four arguments is accepted by this court, Defendant's Motion for Summary Judgment must fail. Plaintiffs' case however does not establish an exception to the issue preclusion bar.

As stated, issue preclusion bars from relitigating issues of fact or law previously determined by a valid final judgment in an action between the same parties. *Id.* To establish issue preclusion, the Defendants here must show that (1) Plaintiffs in this action were a party to a prior action; (2) the issues sought to be precluded here are the same as those involved in the prior action; (3) the issue was actually litigated; and (4) the determination of the issue was essential to

the final judgment. *County of Cook v. MidCon Corp.*, 773 F.2d 892, 898 (7th Cir.1985). Issue preclusion is a matter of substantive law requiring the application of the state common law. *Alsup v. Spratt*, 577 F .Supp. 557, 561 (N.D.Ind.1983).

In this case, Defendants have successfully established all four elements of issue preclusion. Counts I and III of the Complaint in the case before this Court are ERISA claims directed against Defendant Carr regarding East West. Although Defendant Carr was not a party in *Wsol I* FMA was a defendant in this first action. "A party is in privity with another "if his own interests [are] so closely aligned to [the prior] party's interest that the party was his virtual representative." *Id.* (citing *Progressive Land Developers, Inc. v. Exchange Nat. Bank of Chicago*, 266 Ill. App. 3d 934, 945, 641 N.E. 2d 608, 616 (Ill. App. Ct1994)). Although not a party to the prior action, Carr was FMA's Chairman and President, and testified in the trial of the earlier cause of action for a full day. Therefore, it can only be concluded that Carr is in privity with FMA. Carr and FMA, therefore, satisfy the first element of the issue preclusion test.

The issues sought to be precluded are also the same. Counts I and III are identical to the ERISA Counts I and II directed against FMA in the earlier action, *Wsol I*, in which Judge Conlon ruled that Plaintiffs did not prove any of the elements of their ERISA claims against FMA regarding East West. (Def.'s LR56.1 (a)(3) ¶ 15.) As these issues were litigated in *Wsol I*, and determination of these issues was essential to the final judgment, Plaintiffs are precluded from relitigating these identical issues against Carr pursuant to the general rule of issue preclusion.

Counts XI and XII of the *Wsol II* complaint are RICO claims directed at Carr and FMA, and the other Defendants. In order to establish a RICO claim, Plaintiffs must show: (1) conduct; (2) of an enterprise; (3) through a pattern and; (4) of racketeering activity. *Goren v. New Vision Int'l.*, 156 F.3d 721, 727, 732 (7th Cir.1998); *Mira v. Nuclear Measurements Corp.*, 107 F.3d

466, 473 (7th Cir.1997). The lack of element (4) a "pattern of racketeering activity" was previously decided in *Wsol I*.

In *Wsol I*, Judge Conlon found that FMA's use of East West was proper and that FMA did not deceive the Fund regarding East West. (Transcript of Proceedings Before the Honorable Suzanne B. Conlon, No. 99 C 1719, p. 959 (Jan. 25, 2000)). Judge Conlon found that the fund paid a standard institutional commission rate, and that East West provided valuable services to the Fund. *Id.* Further, Judge Conlon observed no evidence of racketeering activity regarding FMA and East West. *Id.* Judge Conlon found East West was a "bona fide introducing broker," that the "plaintiffs [had] failed to establish that FMA's use of East West was not in the Fund's best interests," and that not "a shred of evidence [existed] that FMA ever paid East West a referral fee or that use of East West was a condition of FMA's contract with the Fund." *Id.* at 958-960. Importantly, Judge Conlon found that Plaintiffs failed to prove that "FMA pursued any interests other than the fund participant's best interests when FMA made its investment decisions." *Id.* at 960. Obviously, the determination of this RICO issue was essential to final judgment. Plaintiff's counsel admits that the "particular [racketeering] scheme" alleged in *Wsol I* is the exact same scheme alleged in *Wsol II*. Transcript of the Proceedings Before the Honorable Suzanne B. Conlon, 99 C 1719, pp. 8-9 (Jan. 14, 1999). Therefore, the elements for issue preclusion have been satisfied.

Plaintiffs argument that the decision in *Wsol I* is not final for issue preclusion purposes is insufficient as a matter of law. "For purposes of issue preclusion, "final judgment" includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect." *Miller Brewing Co. v. Jos. Schlitz Brewing*

*Co.*, 605 F.2d 990, 996 (7th Cir.1979) (citing Restatement (Second) of Judgments § 41 cmt. G). The court in *Miller* stated that;

> "[T]he court should determine that the decision to be carried over was adequately deliberated and firm even if not final in the sense of forming a basis for a judgment already entered. This preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal are factors supporting the conclusion that the decision is final for the purposes of issue preclusion." *Id.*

In this case, Plaintiffs were given the opportunity to be fully heard in the prior bench trial before Judge Conlon. The Minute Order delivered by Judge Conlon and entered on January 27, 2000 granting FMA's motion for Judgment on Counts I through VII, and dismissing Counts VIII through X (and rendering judgment for East West on Count XI) is a thoughtful and reasoned opinion. Upon entry of the judgment, the ruling was appealed. The Court of Appeals is now faced with the issue of whether Judge Conlon erred. For these reasons the court rejects Plaintiff's contention that Judge Conlon's decision was not final for the purpose of issue preclusion. Moreover, if Judge Conlon did in fact err the Seventh Circuit Court of Appeals is the only proper Court to reverse her ruling.

Plaintiffs put forth that the indictments and guilty plea of William Close and Christopher Roach, named Defendants in this lawsuit and the indictment and guilty plea of Richard Tringale are changed circumstances sufficient to deny *Wsol I* its preclusive effect. We disagree. A party may avoid collateral estoppel if it demonstrates "that [(1)] newly discovered evidence was essential to a proper decision in the prior action and [(2)] that he was in no way responsible for the lack of such evidence in the prior action. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 962 F. Supp. 122, 123 (N.D.Ill.1997). On March 19, 2001, Judge Conlon issued her Memorandum Opinion And Order ("Opinion") denying

13

Plaintiffs' motion for new trial in *Wsol I* based on this same "new evidence." (Pl.'s LR56.1 Supp. Stmt. Ex. 5).

In the March 19, 2001 Opinion, Judge Conlon held that none of the "new evidence" submitted with Plaintiffs' Response- the declaration of Christopher Roach ("Roach"), Roach's Plea Agreement in United States v. Close, 00 CR 288 (N.D.Ill., Norgle, J.) ("*Close*"), the Plea Agreement of Richard Tringale ("Tringale") in *Close*, the Roach and Tringale guilty plea colloquy (Pl. LR56.1 Supp.Stmt. Ex.1,2. and 3 respectively)- warranted a new trial in *Wsol I*. Judge Conlon ruled:

> "it is beyond question that Roach perjured himself either during his pretrial deposition [in *Wsol I*] or in his declaration by giving contradictory answers on material matters." (Opnion, p.7);

> "Roach, who was the owner of East West, selectively invoked the Fifth Amendment during his pretrial deposition in this case. His present declaration irreconcilably contradicts his pretrial deposition testimony in (sic) several material respects." (Opinion, p.3)

> Roach's "settlement agreement to cooperate with Plaintiffs and furnish his declaration in this case in exchange for dismissal of Plaintiff's claims against East West suggests a basis for bias and potential impeachment." (Opinion, p.7); and

> "Roach's proffered post-trial testimony does not qualify as newly discovered evidence. The finality of a judgment cannot be compromised by recruiting witnesses after trial whose earlier unavailability or uncooperativeness was predicated on their own criminal liability." (Opinion, p.5)

Judge Conlon's then concluded that Plaintiffs' proffered new evidence did not satisfy the elements for a Rule 60(b)(2) motion for new trial. This case involves defensive, mutual issue preclusion. Defensive, mutual issue preclusion has long been recognized by federal courts and is strictly applied. See *Parklane Hosiery v Shore*, 439 U.S. 322, 329 (1979); *Blonder-Tongue Laboratories*, 402 U.S. at 328-329.

Second, Judge Conlon also decided that Plaintiffs failed to establish that they bore no responsibility for their failure to secure the testimony of Tringale at the trial of *Wsol I*. As to Tringale, Judge Conlon again found:

Plaintiffs "offer no explanation as to why they did not attempt to elicit Tringale's testimony at trial. Nor do they offer a declaration from Tringale that he is now willing to provide testimony that is material as to whether FMA breached its fiduciary duties or engaged in prohibited transaction[s]. Rather, Plaintiffs rely on inadmissible hearsay statements – not directly addressing FMA's conduct- that are contained in Tringale's plea agreement and admissions he made during his guilty plea colloquy. Thus, Plaintiffs have not shown they exercised diligence as to Tringale." (Opinion at 5).

As to Roach, Judge Conlon found that Plaintiffs unsuccessfully attempted to persuade the court in *Wsol I* to draw an adverse inference against FMA based upon Roach's silence. (Opinion at 6).

Finally, Plaintiffs argue that defendants FMA and Carr may not invoke collateral estoppel in this case because Plaintiffs were denied a "full and fair opportunity" to litigate *Wsol I*. Plaintiffs base this assertion on two claims: 1) that in *Wsol I* the court failed to grasp the subject matter and issues involved, and 2) that the plaintiffs were deprived of crucial evidence in *Wsol I*. Misapplication of the law toward these claims forces this court to reject them.

Plaintiffs extensively cite *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979). Primary reliance is put on the language of the decision stating that "full and fair opportunity to litigate [may rest on] one of those relatively rare instances where the Court's wholly failed to grasp the *technical* subject matter and issues in the suit...." *Id.* at 992 (emphasis added). This language can only be appreciated by placing it in the context of *Blonder-Tongue*, a patent case of the type which can create subject matter and issues grounded in science and technology so complex that legal minds not trained in such specialties may have difficulty

15

reaching a decision. *Miller*, 605 F.2d at 994, n.3. *Wsol I* did not deal with the type of complex subject matter and issues that the *Miller* court offered as a bar to collateral estoppel. The *Wsol I* issues were not of the scientifically complex nature as those on *Blonder–Tongue*. The issues in *Wsol I*, instead were of the more routine variety as seen by federal judges. As the court noted in *Miller*, the plaintiffs here "blur[] the distinction between failure to grasp and incorrect decision and argue that [*Wsol I*] was wrong rather than discussing any failure to grasp subject matter of issues." As a wrong decision does not constitute failure to grasp the subject matter, this portion of the plaintiff's "failure to grasp" argument fails.

Next, plaintiffs assert that they were deprived of crucial evidence, thus collateral estoppel should not be available to FMA and Carr.[3] This court does not view the three circumstances cited by the Plaintiffs as a deprivation of evidence. In the case of the deposition testimony, the evidence was available for Judge Conlon to view. Judge Conlon exercising her discretion re viewed the evidence as she saw appropriate to make her decision. Plaintiffs' provide no indication of what the testimony of the two witnesses, Roach and Close, would prove. It can only be concluded that the doctrine of issue preclusion bars the present claims against FMA and Carr.

## CLAIM PRECLUSION

A closely related yet separate doctrine from issue preclusion is claim preclusion. The doctrine of claim preclusion holds that "a prior decision dismissed on the merits is binding in all subsequent litigation between the same parties on claims arising out of the same facts even if based upon different legal theories or seeking different relief on issues which were or might have

---

[3] Plaintiffs cite three ways in which it was so deprived of evidence. First, through refusal of the court to consider certain testimony of witnesses, second, by plaintiffs' inability to depose two witnesses, and third by the secrecy of the grand jury's parallel investigation of FMA.

16

been litigated in the prior action but were not." *Northern Assurance Co. of America*, 201 F.3d at 87 (citing *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir.1997).

Claim preclusion bars a subsequent suit in federal court when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties; and (3) a final judgment on the merits of the original suit. *See Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995). Summary judgment is appropriate if claim preclusion applies. *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir.1992). Defendants clearly demonstrate in their memorandum in support of their motion that the requirements are met.

First, there is an identity of the parties or their privies. Plaintiffs in both *Wsol I* and this current action are the Fund and its current trustees. FMA is a defendant in both *Wsol I* and this current action. Although Carr is only named as a defendant in this current action and not in *Wsol I*, Carr is privy to FMA due to his position a FMA's Chairman and President. Identity of the parties, therefore, exists as to the plaintiffs, FMA and Carr.

Second, there is a final judgment on the merits. A judgment in favor of FMA on all counts was entered by Judge Conlon on January 28, 2000. This judgment was in response to FMA's motion for judgment on partial findings, and based on findings of fact and conclusions of law, so was therefore a judgment "on the merits."

Third, there is an identity of the causes of action between *Wsol I* and this current action. Plaintiffs have in this action brought the exact claims that were contained in the proposed amended complaint in *Wsol I*. Courts have barred actions on the basis of claim preclusion where a litigant attempts to assert claims that were contained in a proposed amended complaint in a prior lawsuit. *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir.1997). The Seventh Circuit also held that claim preclusion "operates not only as a bar to the further litigation

17

of matters decided in the prior action, but also to any issues which could have been raised."
*Golden*, 53 F.3d at 869-870. In fact "[i]t is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were subject of the proposed amended pleading."
*King v. Hoover Group, Inc.*, 958 F.2d 219, 222- 223 (8th Cir. 1992).

Further, it is the requirement of claim preclusion – that a plaintiff must bring all claims at once against the same defendant (and privies) relating to the same transaction or event – which has led the courts to bar claims that were subject to a proposed amended pleading in a prior lawsuit. *Northern Assurance Co. of America*, 201 F.3d 84, 87-88 (2d Cir. 2000). These results occur because "the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit." *Id.* at 88. These claim preclusion principles bar plaintiffs' claims against Carr and FMA.

Plaintiffs' present claims arise from the same transaction or event that formed the basis for *Wsol I*, that being an alleged undisclosed scheme by all present defendants to "divert millions of dollars in commissions and transaction fees on securities transactions made by FMA on the Fund's behalf to enrich themselves . . . ." This is the same scheme Plaintiffs tried to establish in *Wsol I*, and which Judge Conlon held to be unfounded. The Court therefore finds that the third requirement for claim preclusion, identity of the causes of action, has been met.

Furthermore, the Seventh Circuit has squarely held that "new evidence does not relieve a litigant of the preclusive effect of a judgment" in the context of claim preclusion. *Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir.1994). The court also notes that Judge Conlon has denied Plaintiffs' motion for a new trial based on the new evidence. Judge Conlon decided that the subsequent indictments and plea agreements were not sufficient to render a new trial.

Plaintiffs' appeal on the judgment of *Wsol I* is pending. On appeal, Plaintiffs would be able to argue, among other things, whether the *Wsol I* Court denied Plaintiffs a fair trial, erred in not granting Plaintiffs a new trial in light of "new evidence." Plaintiffs' remedy for supposed errors made by the *Wsol I* Court lies with the Court of Appeals.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is hereby granted (#17-1).

SO ORDERED 9/17/01

ENTERED:

HON. RONALD A. GUZMAN
**United States Judge**